NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL AT HAMILTON, INC., | |
| Plaintiff, | Civil Action No. 12-cv-7049 (JAP) |
| v. | **OPINION** |
| SMX CAPITAL, INC., | |
| Defendant. | |

PISANO, District Judge

Plaintiff Robert Wood Johnson University Hospital at Hamilton, Inc. ("Plaintiff") and Defendant SMX Capital, Inc. ("Defendant") entered into an Agreement whereby Defendant would construct solar panels on land it leased from Plaintiff and sell the solar energy to Plaintiff. The Agreement required five conditions precedent to be satisfied before the parties' rights and obligations became binding. The conditions were not satisfied. Plaintiff terminated the contract and brought this action for breach of contract and breach of the implied duty of good faith and fair dealing. Defendant's Motion to Dismiss [docket # 7] and Plaintiff's Cross-Motion for Leave to Amend [docket # 11] are presently before this Court. The Court held oral argument on July 25, 2013. *See* Fed. R. Civ. P. 78. For the reasons outlined below, this Court grants Defendant's Motion to Dismiss and denies Plaintiff's Cross-Motion to Amend.

## I. BACKGROUND[1]

In 2011, Plaintiff issued a Request for Proposal ("RFP") to "select a vendor to finance, construct[,] and operate a solar facility" on Plaintiff's campus. Compl. ¶ 7. Plaintiff selected Defendant, and on October 27, 2011, Plaintiff and Defendant entered a Solar Power Purchase Agreement ("Agreement") and a Lease. Compl. ¶ 8.

### A. Terms of the Agreement

Under the Agreement, Plaintiff leased to Defendant a piece of property, upon which Defendant intended to "finance, construct, own and operate a Solar Facility" at its sole cost and expense. Compl., Ex. A, Recitals A-C. Plaintiff would then purchase "all of the Energy generated by the Solar Facility . . . ." *Id.* at Recital B. The parties agreed that Plaintiff would pay a "flat rate . . . equal to eight and three quarters cents ($.0875) per kilowatt hour" for solar energy. *Id.* at 3.3(a). Moreover, the parties agreed that Defendant may have to expend $1.1 million to upgrade Plaintiff's existing utility service from 460V to 26kV as part of the installation of the Solar Facility. *Id.* at 3.3(c); Compl. ¶ 15. If, however, Defendant did not undertake the upgrade or the upgrade was completed for less than $1.1 million, the purchase price of $.0875 per kilowatt hour would be reduced by an appropriate amount. *Id.* The Agreement commenced on October 27, 2011 and would continue for approximately twenty years

---

[1] In addressing a motion to dismiss, the Court must accept as true the allegations contained in the Complaint. *See Levkovsky v. New Jersey Advisory Comm. on Judicial Conduct*, 2012 WL 3715981, *1 n. 1 (D.N.J. Aug. 27, 2012). The Court "may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiff's claim." *Hendrix v. City of Trenton*, 2009 WL 5205996, *3 (D.N.J. Dec. 29, 2009). Thus, the facts below are taken from Plaintiff's Complaint filed on November 13, 2012, and any documents specifically referred to in the pleadings such as the Solar Power Purchase Agreement and Lease. The facts in this "Background" section do not represent the Court's factual findings.

after the date that the Solar Facility began commercial operations. *Id.* at 2.1(a). Plaintiff could extend the term of the Agreement for an additional five years. *Id.* at 2.1(b).

The "rights and obligations of the Parties under this Agreement," however, were "conditioned upon the satisfaction in full (or waiver) of the following conditions precedent[]":

> (a) Defendant "shall have received evidence satisfactory to it that the Tax Incentives will be available to" it;
>
> (b) "all applicable governmental approvals, permits, contracts and agreements required for installation, operation and maintenance of the Solar Facility and the sale and delivery of Energy to . . . [Plaintiff] as well as applicable certifications and authorizations have been obtained or can be obtained in due course and without unreasonable cost or delay;"
>
> (c) Defendant "has obtained confirmation, satisfactory to it, that an Interconnection Agreement, in form and substance reasonably acceptable to . . . [Defendant], will be executed and delivered by the . . . [Plaintiff] in accordance with Section 5.1(e);"
>
> (d) Defendant "has obtained confirmation, satisfactory to it, that the Solar Facility is eligible for the Utility's net metering service and related rules of service applicable to customer on-site generation of renewable energy";
>
> (e) Defendant "has obtained from any mortgagees, bondholders and other lien holders with respect to the Facility Site or the Premises waivers of any interest in the Solar Facility or payments arising in connection therewith."
>
> [Agreement, § 2.2.]

The Agreement provides that Defendant "shall make commercially reasonable efforts to achieve the results desired by" these conditions precedent "as expeditiously as practicable." *Id.* at § 2.2(f).

Furthermore, the Agreement defines "default" as including "the failure to perform any material covenant or obligation set forth in this Agreement . . . if such failure is not remedied . . . within twenty (20) Business Days after receipt of written notice from the Non-Defaulting Party .

3

. . ." *Id.* at § 8.1(d). The Agreement also contains a limitation of liability provision which excludes the recovery of "special, punitive, exemplary, indirect, or consequential damages . . . ." *Id.* at § 11.2.

### B. Defendant's Alleged Default

During the RFP process, Defendant informed Plaintiff that Advanced Solar Products, a company "with considerable experience in the field of solar energy and related sustainable technologies," would be part of Defendant's team and "lead the engineering, design[,] and building effort for the Solar Facility." Compl. ¶ 20. After entering the Agreement with Plaintiff, on March 26, 2012, Defendant entered an Engineering, Procurement and Construction Contract with Advanced Solar. Under this contract, Advanced Solar was "responsible for all of the work and services required in connection with the design, engineering, permitting, procurement, civil works, construction, installation, commissioning, start-up, testing and completion of the Solar Project." Compl. ¶ 22. Defendant and Advanced Solar agreed that Defendant had the right to suspend Advanced Solar's work and terminate the contract for its convenience. Compl. ¶ 23.

On April 11, 2012, Defendant issued a limited notice to proceed, which "authorized Advanced Solar to commence a preliminary design and site plan for the Solar Facility." Compl. ¶ 24. Less than a month later, Defendant directed Advanced Solar to cease all work related to the Solar Facility.

On May 24, 2012, Plaintiff sent Defendant a Notice of Event of Default ("Notice") pursuant to Section 8.1(d) of the Agreement. In the Notice, Plaintiff told Defendant that it "was not making a commercially-reasonable effort to satisfy the Conditions Precedent nor to proceed with construction of the Solar Facility." Compl. ¶ 29. Moreover, Plaintiff demanded that

Defendant cure the default within twenty business days of receipt of the Notice. Defendant received a copy of the Notice no later than May 25, 2012; however, it did not communicate with Plaintiff or cure the default in the twenty business days following receipt of the Notice. As a result, on July 10, 2012, Plaintiff sent Defendant a letter, stating that the Lease terminated on June 30, 2012 and designating August 10, 2012 as the early termination date for the Agreement. Defendant has since advised Plaintiff that it accepts August 10, 2012 as the Agreement's termination date and June 30, 2012 as the Lease's termination date.

### C. Procedural History

On November 13, 2012, Plaintiff filed a Complaint, alleging breach of contract because Defendant did not make "commercially-reasonable efforts to satisfy the Conditions Precedent or to proceed with development of the Solar Facility" and breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 26, 42. Plaintiff alleges that due to Defendant's breach, it "has and will suffer" direct damages, including the benefit of its bargain. Specifically, Plaintiff alleges the following damages: (1) "the ability to purchase as much as 3,004,904 kWh of electricity per year at the Purchase Price of $.0875 for a period of up to twenty-five years, which Purchase Price is substantially below the price of electricity that the Hospital currently pays and will pay in the future"; (2) "the guaranteed right to purchase as much as 2,554,168 kWh of electricity at a Purchase Price of $.0875 for a period of twenty-five years, which Purchase Price is substantially below the price of electricity that the Hospital currently pays and will pay in the future"; (3) the upgrade to the existing electric utility service, which is estimated to cost $1.1 million; and (4) the cost of roof repairs, which is estimated to be $150,000. Compl. ¶ 38.

Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(6) on December 20, 2012 [docket # 7], arguing that: (1) Plaintiff failed to allege sufficient facts to state a claim for breach of contract, and the nonoccurrence of conditions precedent is not a breach; and (2) Plaintiff failed to allege sufficient facts to show cognizable damages because the Agreement's limitation of liability provision prevents consequential damages and Plaintiff's alleged damages are consequential. Plaintiff filed its Cross-Motion to Amend on January 22, 2013 [docket # 11], asserting that: (1) it alleged sufficient facts to state a claim for breach of contract and breach of the implied duty of good faith and fair dealing; (2) Defendant is liable for breach because it prevented the conditions precedent from occurring; and (3) it should be granted leave to amend its Complaint. Defendant replied on January 28, 2013 [docket # 13], contending that Plaintiff assumed the risk that the conditions precedent would not occur since the language in the conditions precedent indicates that their occurrence depends on Defendant's satisfaction; as such, Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing must be dismissed.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed for "failure to state a claim upon which relief can be granted." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, in order to withstand a motion to dismiss

pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To decide if a complaint meets this plausibility standard and therefore, survives a motion to dismiss, the Third Circuit has required a three step analysis: (1) the Court must "outline the elements a plaintiff must plead to . . . state a claim for relief"; (2) the Court must identify "those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, [the Court] should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### B. Breach of Contract

To "establish a breach of contract claim, a plaintiff has the burden to show" that: (1) "the parties entered into a valid contract"; (2) the "defendant failed to perform his obligations under the contract"; and (3) "plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (N.J. App. Div. 2007). This Court will grant Defendant's Motion to Dismiss the breach of contract claim for three reasons: (1) Plaintiff did not show that Defendant failed to perform its obligations under the contract; (2) the doctrine of prevention does not apply because Plaintiff assumed the risk that the conditions precedent will be prevented; and (3) irrespective of that analysis, Plaintiff did not show that it sustained cognizable damages.

7

First, Plaintiff failed to state a claim for breach of contract because it did not plead sufficient factual matter to show the second element of breach of contract — that Defendant failed to perform its obligations under the contract. Plaintiff alleges that although the Agreement required it to do so, Defendant did not make "commercially-reasonable efforts to satisfy the Conditions Precedent or to proceed with development of the Solar Facility . . . ." Compl. ¶¶ 19, 26. The Complaint alleges that approximately five months after entering the Agreement, Defendant contracted with Advanced Solar and made Advanced Solar "responsible for all of the work and services required in connection with the design, engineering, permitting, procurement, civil works, construction, installation, commissioning, start-up, testing and completion of the" project. Compl. ¶ 22. Approximately two weeks later, Defendant instructed Advanced Solar to proceed with the "preliminary design and site plan for the Solar Facility," but less than a month later, Defendant directed Advanced Solar to cease all work. Compl. ¶ 24-25. Pursuant to its contract with Advanced Solar, Defendant had the right to suspend Advanced Solar's work for its convenience. Compl. ¶ 23. Plaintiff does not allege, however, how Defendant's alleged failure to make commercially reasonable efforts to satisfy the conditions precedent constitutes a breach of contract because the parties' rights and obligations under the Agreement never became binding since the conditions precedent were not satisfied. *See* Agreement, § 2.2. Moreover, Plaintiff does not allege what commercially reasonable efforts or steps, if any, Defendant made or failed to make regarding the conditions precedent. Plaintiff merely concluded that Defendant failed to make commercially reasonable efforts to satisfy the conditions precedent, and it failed to provide factual allegations that would plausibly give rise to an entitlement for relief; this does not satisfy the standard in *Iqbal* and *Bistrian*.

Moreover, Plaintiff assumed the risk that the conditions precedent will be prevented and therefore, it cannot state a claim for breach of contract that is plausible on its face. "A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or a contractual duty arises." Williston on Contracts § 38.7. Here, the "rights and obligations of the Parties under the Agreement" were "conditioned upon the satisfaction" of five conditions precedent. *See* Agreement, § 2.2. The nonoccurrence of a condition "does not, absent a promise that it would occur or would be performed, give rise to a breach of contract" claim. Williston on Contracts, § 38.7; *see also Shear v. Nat'l Rifle Ass'n of Am.*, 606 F.2d 1251, 1254 (D.C. Cir. 1979) (stating "[g]enerally, one is not bound by a conditional contract until the condition occurs"). The "doctrine of prevention[, however,] is an exception to this general rule." *Shear*, 606 F.2d at 1254-55.

The doctrine of prevention is "triggered when a promisor completely forecloses occurrence of the condition or *substantially* hinders its occurrence" and makes a party contractually liable "when [the] party wrongfully prevents the condition from occurring." *District-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1023 (D.C. Cir. 1985) (internal quotation omitted). Under this doctrine, "a party may not escape contractual liability by reliance upon the failure of a condition precedent . . . ." *Mobile Commc'ns Corp. of Am. v. MCI Commc'ns Corp.*, 1985 Del. Ch. LEXIS 502, *9 (Del. Ch. Aug. 27, 1985). The "theory underlying this rule appears to be based on the equitable maxim that one cannot profit from or escape liability for his own wrongdoing." *Omaha Public Power Dist. V. Employers' Fire Ins. Co.*, 327 F.2d 912, 916 (8th Cir. 1964). "[O]rdering a party to stop performance may constitute prevention excusing performance." Williston on Contracts § 39:13.

The doctrine of prevention, however, "does not apply where, under the contract, one party assumes the risk that fulfillment of the condition precedent will be prevented." *Doherty v. Am. Home Products Corp.*, 2000 U.S. App. LEXIS 14166, *5 (2d Cir. Jun. 15, 2000) (quoting *Mobile Commc'ns Corp. of Am.*, 1985 Del. Ch. LEXIS 502, at *11). The "essential inquiry is whether or not the contract allocated the risk of nonsettlement." *District-Realty Title Ins. Corp.*, 767 F.2d at 1024.

Here, the doctrine of prevention does not apply because the language in the conditions precedent shifted the risk that the conditions precedent will not occur to Plaintiff. Three of the five conditions precedent required Defendant to receive evidence or obtain confirmation "satisfactory to it," and one condition required the Interconnection Agreement to be "reasonably acceptable to" Defendant. *See* Agreement, § 2.2(a)-(e). *See, e.g.*, *District-Realty Title Ins. Corp.*, 767 F.2d at 1024 (finding no prevention doctrine because "[b]y stating that the funds were to be returned to Ensmann if settlement did not occur 'for any reason,' the contract allocates to Dumbarton the risk of nonsettlement"); *Mobile Commc'ns Corp. of Am.*, 1985 Del. Ch. LEXIS 502, at *11-12 (finding that Plaintiff did not prevail under the prevention doctrine because it assumed the risk that Defendant's board would disapprove the transaction and "board approval was a condition to the consummation of the deal"). Defendant "had every reason to bargain for nonliability in the event that" the conditions precedent failed to occur because it would finance, construct, own, and operate the Solar Facility at its own expense. *District-Realty Title Ins. Corp.*, 767 F.2d at 1022. The parties further agreed that their "rights and obligations . . . under [the] Agreement" were "conditioned upon the satisfaction" of the conditions precedent. Thus, although Plaintiff attempted to plead that Defendant breached the Agreement by failing to make commercially reasonable efforts to satisfy the conditions precedent, Plaintiff assumed the risk of

10

nonoccurrence of the conditions precedent. Plaintiff cannot now allege that Defendant is liable for breach of contract because the Agreement authorized the nonoccurrence of the conditions precedent and the parties rights and obligations under the Agreement never became binding. Therefore, Plaintiff failed to state a claim for breach of contract that is plausible on its face.

Irrespective of the breach analysis above, Defendant's Motion to Dismiss must also be granted because Plaintiff failed to sufficiently allege another element of breach of contract — cognizable damages. The Agreement contains a limitation of liability clause, which excludes the recovery of consequential damages, and Plaintiff's damages are consequential. *See* Agreement, § 11.2. Limitation of liability clauses, which place "contractual limit[s] on consequential damages[,] are permitted unless unconscionable." *Am. Leistriz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 Fed. Appx. 963, 966 (3d Cir. 2010). A clause is "unconscionable only if the circumstances of the transaction, including the seller's breach, cause [the] exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties . . . ." *Am. Leistriz Extruder Corp.*, 363 Fed. Appx. at 966 (internal quotation omitted). Plaintiff has not alleged that the limitation of liability provision here is unconscionable. Therefore, any request for damages must be analyzed in conjunction with the Agreement's limitation of liability provision.

The "difference between direct and consequential damages depends on whether the damages represent (1) a loss in value of the other party's performance, in which case the damages are direct, or (2) collateral losses following the breach, in which case the damages are consequential." *Atl. City Associates, LLC v. Carter & Burgess Consultants, Inc.*, 453 Fed. Appx. 174, 179 (3d Cir. 2011). "Direct damages refer to those which the party lost from the contract itself — . . . the benefit of the bargain — while consequential damages refer to economic harm

beyond the immediate scope of the contract." *Id.* "When performance of a condition precedent . . . has been prevented by the promisor," the promissee is "entitled to recover the contract price and, at a minimum, may recover any actual expenditures made in reliance on the contract." Williston on Contracts § 39:12; *see also United States v. Behan*, 110 U.S. 338, 344 (1884) (stating where a "breach consists in preventing the performance of the contract," damages are: (1) expenditures; and (2) "the profits that he would realize by performing the whole contract," which "cannot always be recovered" because they "may be too remote and speculative in their character").

Here, Plaintiff alleges consequential damages, which are precluded under the Agreement's limitation of liability provision. Plaintiff does not allege any actual expenditures because Defendant was supposed to finance, construct, own, and operate the Solar Facility at its sole expense. Instead, Plaintiff alleges the following damages: (1) the ability to purchase a certain amount of electricity at a certain cost; (2) the guaranteed right to purchase a certain amount of electricity at a certain cost; (3) the cost to upgrade the existing electric utility service; (4) and the cost of roof repairs. These damages, however, are not cognizable because the rights and obligations of the parties under the Agreement never became binding since the Agreement's conditions precedent were not satisfied. *See* Agreement, § 2.2. Thus, it is improper for Plaintiff to seek these damages because Defendant's obligation to provide electricity and to improve Plaintiff's electric utility service and roof never became binding. As a result, Defendant's Motion to Dismiss must be granted because Plaintiff has failed to sufficiently allege cognizable damages.

Therefore, Plaintiff has failed to state a claim for breach of contract because: (1) Plaintiff has failed to plead sufficient factual matter to show a breach; (2) Plaintiff assumed the risk of

nonoccurrence of the conditions precedent and cannot now allege that Defendant breached the contract by preventing the conditions' occurrence; and (3) Plaintiff alleged consequential damages, which are precluded by the Agreement's limitation of liability provision. Thus, this Court will grant Defendant's Motion to Dismiss as to the breach of contract claim.

### C. Breach of the Implied Covenant of Good Faith & Fair Dealing

"A covenant of good faith and fair dealing is implied in every contract. . . ." *Stanton v. Greenstar Recycled Holdings, LLC*, 2012 WL 3201370, *4 (D.N.J. Aug. 2, 2012); *see also In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. 712, 736 (S.D.N.Y. 1989). The implied covenant of good faith and fair dealing and the prevention doctrine are "substantially related." *Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1297 (11th Cir. 2012); *see also In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. at 737 n.9 (stating that they are "kindred precepts"). Thus, just as the prevention doctrine "does not apply where . . . one party assumes the risk that fulfillment of the condition precedent will be prevented," *Akanthos Capital Mgmt., LLC*, 677 F.3d at 1297, good faith is irrelevant where, as here, one party assumes the risk that satisfaction of the conditions precedent will be prevented. *See Dixon v. Bernstein*, 182 F.2d 104, 105 (D.C. Cir. 1950) (finding the "issue of good faith . . . is irrelevant" where the contract authorized Defendant's prevention by allowing him to withdraw); *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. at 738 (stating that the contract's language was "analogous" to prevention doctrine cases where "parties placed the full risk on plaintiffs" and finding that the contract's language "negated an implied good faith obligation"). As a result, here, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing because Defendant's good faith is irrelevant since the

contract shifted the risk of nonoccurrence of the conditions precedent to Plaintiff. The Court will grant Defendant's Motion to Dismiss as to this claim as well.

### D. Cross-Motion to Amend

Plaintiff filed a Cross-Motion to Amend its Complaint, but Defendant argues that the Cross-Motion should be denied because it would be futile.

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1). After this, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). The following grounds, however, "could justify a denial of leave to amend": undue delay, bad faith, dilatory motive, prejudice, and futility. *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000). Futility exists when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane*, 213 F.3d at 115. In assessing futility, the Court applies the Rule 12(b)(6) standard. *Id.*

Here, this Court will deny Plaintiff's Cross-Motion to Amend because an amendment would be futile. The Agreement is clear that Plaintiff assumed the risk of nonoccurrence of the conditions precedent, and new allegations in an amended complaint would not change this fact. Thus, as demonstrated above, Plaintiff is unable and will be unable to state a claim for breach of contract and breach of the implied covenant of good faith and fair dealing.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted and Plaintiff's Cross-Motion to Amend the Complaint is denied.  An appropriate Order accompanies this Opinion.

Dated: August 26, 2013                                      /s/ Joel A. Pisano
                                                                           JOEL A. PISANO
                                                                           United States District Judge